IN THE UNITED STATES DISTRICT COURT
<u>FOR THE WESTERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

    v.                 19-CR-6084-FPG

WILLIAM C. READ,

      Defendant.
_____

**STATEMENT OF THE GOVERNMENT WITH RESPECT
<u>TO SENTENCING FACTORS</u>**

**PLEASE TAKE NOTICE**, that the government hereby adopts all findings of the revised Pre-sentence Report (PSR) with respect to sentencing factors in this action.

The PSR notes that the Plea Agreement correctly calculated a total offense level of 40, with a criminal history category I, but incorrectly set forth a guideline range of 235 to 293 months. (PSR, ¶ 72). Pursuant to *United States v. Lawlor*, 168 F.3d 633 (2d Cir. 1999), the government requests that the Court utilize the guideline calculation set forth in the plea agreement when determining the appropriate sentence in this case.

Should the defendant present any letters of support or sentencing statement to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three business days prior to sentencing.

The defendant is required by 18 U.S.C. § 3013 to pay the sum of $100 at the time of sentencing. Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United States District Court Clerk.

It is requested that the Court order that all financial obligations be due immediately. In the event the defendant lacks the ability to immediately pay the financial obligations in full, it is requested that the Court set a schedule for payment of the obligations.

In the event present counsel for the defendant will continue to represent the defendant after sentencing in regard to the collection of unpaid financial obligation(s), it is requested that a letter so advising be sent to:

>Asset Forfeiture/Financial Litigation Unit
>U.S. Attorney's Office--WDNY
>138 Delaware Avenue
>Buffalo, New York  14202

If a letter is not received within 10 days of sentencing, the defendant will be directly contacted regarding collection of the financial obligation(s).

Upon the ground that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, the government hereby moves the Court to apply the additional one (1) level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(b).

## **ARGUMENT**

In reviewing the Section 3553(a) factors, as enumerated in Title 18 of the United States Code, the government respectfully requests the Court particularly consider the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, and the need to protect the public from further crimes.  *See* Title 18, United States Code, Sections 3553(a)(1) and (a)(2).

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the §3553(a) factors. *United States v. Dorvee,* 616 F.3d 174, 180 (2d Cir. 2010) quoting *United States*

*v. Gall,* 552 U.S. 38, 49-50 (2007); *see also, United States v. Aumais,* 656 F.3d 147 (2d Cir. 2011). In *Aumais,* the Second Circuit upheld the guidelines sentence imposed by the district court, noting that the sentence was based upon an "individualized assessment" of the §3553(a) factors. *Aumais,* at 157. In this case, an *"individualized assessment"* of this defendant supports a sentence of imprisonment of 293 months and a lifetime period of supervised release, consistent with the maximum guideline calculation set forth in the plea agreement.

## Offense Conduct

In September 2018, the defendant, using the screenname "billy," engaged in online conversations using the Meet24 chat application with an undercover (UC) New York State Police (NYSP) investigator, whom the defendant believed was a 13 year old girl. Believing that he was communicating with an actual child, the defendant stated, among other things, "I want u but I don't want to go to jail for fucking u." (PSR, ¶ 28).[1] The defendant attempted induce the child to send him nude photographs by sending the child a picture of his penis and stating "Can I see your pussy." *Id.* The defendant ultimately stopped communicating with the child under his "billy" profile, and proceeded to create a false profile under the name "Jamie," in which he portrayed himself to be a 25 year old female. (PSR, ¶ 29). Using the "Jamie" profile, the defendant reengaged the 13 year old child (the UC) in sexually explicit conversations, in which "Jamie" wanted the child to meet "Jamie's" husband, and inquired about the child wanting to lose her virginity. *Id.* The UC ultimately ignored the "Jamie" profile, and proceeded to create a new profile "Young fun," using the name "Greg" in which he posed as the uncle of a 9 year old female who was interested in having sex with children and trading child pornography. (Plea Agreement, ¶ 8(b)).

---

[1] The PSR accurately describes the full extent of the defendant's online communications.

3

Between September 28 and October 1, 2018, the defendant engaged in conversations with "Greg" (Young fun) via Meet24. "Greg" and the defendant ultimately exchanged phone numbers and began to communicate via text messaging. During the course of the conversations, "Greg" and the defendant discussed their mutual interest in raping children and trading child pornography. (PSR, ¶¶ 31-35). "Greg" told the defendant that "Greg" had custody and control of his 9 year old niece and that "Greg" regularly engaged in sex with the child. This excited the defendant, who sent "Greg" images of child pornography and requested to have sex with "Greg's" 9 year old niece, which was arranged to take place on October 1, 2018. (Plea Agreement, ¶ 8(c); PSR. ¶¶ 35-36). On that date, "Greg" advised the defendant to bring his own condoms and asked the defendant to purchase the child candy or a gift in order to make her comfortable.

The defendant specifically expressed his intent to rape the child, stating, among other things, "how much fucking her can I do," "I want my dick in her little pussy very bad," "can I fuck her in her room," and "will you be there when I fuck her." (PSR, ¶ 32-34). Later that day, the defendant arrived at the pre-arranged meeting place in order to have sex with the child, at which point he was taken into custody by members of the NYSP and Homeland Security Investigations. On his person, officers located condoms, candy, and a Samsung cellular phone.

At the time of his plea, the defendant admitted that he believed that "Greg's" 9 year old niece was an actual child and that he intended to have sex with her on the day of the meeting. (Plea Agreement, ¶ 8(g)). Based on the facts of this case, and the defendant's sworn colloquy in Court, there is no doubt that he fully intended to rape the child when he was arrested.

Following his arrest, the defendant was interviewed by law enforcement. Among other things, he spoke about an experience that he had with a 13 year old relative, in which she would rub against him while hugging, causing the defendant to become aroused. (PSR, ¶ 39). The defendant admitted that following these incidents, he would "watch videos, think about the experience, and masturbate." *Id.* The defendant further admitted that he "watches pornography regularly, about a half hour per day, and approximately 20 percent of the pornography he watches is child pornography." *Id.*

In addition to the child pornography that the defendant distributed to the UC, the defendant's devices were forensically analyzed by Homeland Security Investigations. That analysis revealed that the defendant possessed at least 10 videos and 435 images of child pornography, much of which involved prepubescent minors.

## Conclusion

The defendant is an extremely dangerous pedophile and must be incarcerated for a protracted period of time to ensure that he will not pose a further threat to children. He has a longstanding interest in child pornography, which he has distributed to others. He has masturbated to the thought of a 13 year old relative, whom he found to be arousing. He communicated with an undercover investigator, whom he believed was a 13 year old female, asked to see her "pussy" and indicated that he wanted to have sex with her, but didn't want to go to jail for it. Ultimately, he communicated with "Greg," who the defendant thought was a like-minded pedophile, and arranged to have sex with "Greg's" 9 year old niece. To that end, the defendant sent Greg child pornography, purchased condoms and candy, and arrived at a prearranged meeting place.

If "Greg" was real, and actually presented the defendant with a 9 year old child, the defendant would have raped her. Thankfully, "Greg" was a NYSP Investigator and arrested the defendant before he could inflict such horrific harm on a child. The actions of the New York State Police, and "Greg" in particular, have saved an untold number of children from the defendant's terrifying pedophilic and criminal disposition.

The government respectfully submits that the defendant is extremely dangerous and asks the Court to impose a sentence of 293 months imprisonment and a lifetime period of supervised release. Such a sentence is necessary to adequately address the nature of the defendant's offenses, ensure that he cannot pose a further danger to children, and deter others from engaging in similar conduct.

DATED:   Rochester, New York, August 29, 2019.

JAMES P. KENNEDY, JR.
United States Attorney


BY:   s/KYLE P. ROSSI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
100 State Street, Suite 500
Rochester, New York  14614
585/263-6760
Kyle.Rossi@usdoj.gov


TO:   Jeffrey Ciccone, Esq.
Jessica Rider, U.S. Probation