**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**                    **19-CR-6084 (FPG)**

**v.**                                          **DEFENDANT'S**
                                                **SENTENCING STATEMENT**

**WILLIAM C. READ**
                         **Defendant.**

_____

     JEFFREY CICCONE, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

     I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent the defendant, William Read.

     The factual representations made in this Statement are based on investigations by members of my office, conversations with William Read, a review of the Revised Presentence Investigation Report [hereinafter PSR], dated October 29, 2019, and the following exhibit:

          Exhibit A:    Psychological Evaluation Diagnostic and Violence Risk Assessment written by Marc Martinez, PhD, ABPP.

## INTRODUCTION

     On June 25, 2019, Mr. Read pled guilty, pursuant to a written plea agreement, to Attempted Enticement of a Minor, in violation of 18 U.S.C. §2422(b).  (*See* Docket #17).  The written plea agreement entered into by the parties contained a Sentencing Guideline calculation

that included an advisory term of imprisonment of either 168 to 210 months or 235 to 293 months.

The Sentencing Guidelines calculation contained within the PSR recommends a range of 292 to 365 months.  (Docket #24, ¶70).  The written plea agreement expressly reserved the party's rights to request a sentence outside of the advisory Guidelines range.  (*See* Docket #17, ¶17).

Sentencing is currently scheduled for November 5, 2019.

## GENERAL SENTENCING AUTHORITY

Under 18 U.S.C. §3553(a), federal sentencing courts must impose a sentence that is *sufficient, but not greater than necessary*, to meet the purposes of sentencing.  This includes the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid sentencing disparities between defendants with comparable criminal records who have been convicted of similar crimes, and the Guidelines themselves.  *See United States v. Dorvee*, 616 F.3d 174, 182-83 (2d Cir. 2010) (quoting 18 U.S.C. §3553(a)(1)-(6)).

The "sufficient, but not greater than necessary" language of §3553 is commonly referred to as the "parsimony clause." *United States v. Williams*, 475 F.3d 468, 476 (2d Cir. 2007). When imposing sentence, the district court must consider the factors mentioned in §3553(a), including the requirements of the parsimony clause.  *Id.*  Simply stated, if the district court concludes that either of two sentences would properly serve the statutory purposes of §3553(a), application of the parsimony clause compels imposition of the lesser sentence. *See United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

The sentencing court must also consider the advisory Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 245-246 (2005). However, "[e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors." *United States v. Dorvee*, 616 F.3d at 182 (citing *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008)).

The importance of individualized sentencing is a central theme in federal criminal law. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment to ensue.

*Koon v. United States*, 518 U.S. 81, 113 (1996).

In *Booker*, the United States Supreme Court emphasized the importance of reserving sentencing discretion to federal district court judges. The Court held that:

> The federal sentencing statute . . . requires a sentencing court to consider Guidelines ranges . . . ., but it permits the court to tailor the sentence in light of other statutory concerns as well.

543 U.S. at 245-246.

The Court thereafter reaffirmed its position in *Kimbrough v. United States*, 552 U.S. 85 (2007) stating that:

> The sentencing judge . . . has greater familiarity with ... the individual case and the individual defendant before him than the Commission or the appeals court. . . . He is therefore in a superior position to find facts and judge their import under § [3553(a)] in each particular case.

*Id.* at 108 (internal quotations omitted).

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

William Read is 34 years old. He was born in Bath, New York, but was raised primarily by his mother in New Jersey. He has one son, who is 18 years old and currently in college. Throughout his life, Mr. Read has struggled with intellectual disabilities.

Mr. Read's criminal history includes a 2004 conviction for endangering the welfare of a minor. The minor was Mr. Read's high school girlfriend at the time. Both Mr. Read and the young woman were receiving special education services at Haverling High School in Bath, New York. Mr. Read was 18 years old when the relationship began and the young woman was 15. It does not appear that Mr. Read's girlfriend reported any inappropriate conduct. Rather, the relationship was reported by a third party who observed sexual activity involving someone underage. When questioned by authorities, the young woman's mother indicated that she was aware of the relationship and that Mr. Read did not pressure her daughter into sexual activity.

Mr. Read eventually pled guilty and received a sentence of one year probation. An order of protection was also issued. Mr. Read's second conviction, for misdemeanor criminal contempt 2d, resulted when he was seen holding hands with the same young woman while the order of protection was still in effect. Throughout its duration, the relationship was a mutual attraction between two students in the same special education classroom.

Mr. Read does not dispute his prior conduct. Nevertheless, it is important to consider the context. Mr. Read's conduct underlying both convictions occurred within the confines of a long-term relationship that was approved of by both families. Unfortunately, it is because of these prior convictions that Mr. Read's Sentencing Guidelines calculation includes a five-level

4

enhancement for engaging in a pattern of activity.  Although technically applicable, Mr. Read is not the repeat offender that the enhancement was designed to punish.

**Mr. Read Has a History of Intellectual Disabilities**

As alluded to above, Mr. Read has a long history of intellectual struggles.  He was first placed in special education classes while in the second grade.  At that time, he was living with his mother, sister and twin brother in New Jersey.  Mr. Read's mother passed away while he was in high school.  He then moved to live with his father in the Bath, New York area.  Mr. Read eventually graduated with an Individual Education Program (IEP) diploma.  For most of his adult life, Mr. Read has received disability benefits because he is unable to work due to his learning disabilities.

A Psychological Evaluation Diagnostic and Violence Risk Assessment of Mr. Read was recently performed by Dr. Marc Martinez.  (*See* Exhibit A, provided separately).  Included within the evaluation were several assessments of Mr. Read's intellectual abilities.  These assessments measured, among other things, Mr. Read's proficiency regarding reading, vocabulary, math and logical reasoning.  Mr. Read's abilities ranked in the 5th percentile or lower in almost every measurable category.  Across all academic skills, Mr. Read's performance was equivalent to a first or second grade level.  (*See* Exhibit A, p.14).  According to Dr. Martinez, Mr. Read's scores were consistent with someone who is extremely low functioning and suggest a general impairment.  (Exhibit A, p.16-17).

Dr. Martinez also evaluated Mr. Read for a risk of future violence.  Taking into account Mr. Read's intellectual deficiencies, psychopathy personality traits and interpersonal

characteristics, Dr. Martinez found Mr. Read to be a low risk for future violence, physical harm and imminent violence.  (Exhibit A, p.18-19).

Mr. Read has been detained since his arrest on October 1, 2018, now more than 1 year ago.  Mr. Read accepts full responsibility for his actions.  He knows that what he did was wrong and he is extremely sorry.

According to the plea agreement in this case, Mr. Read must serve a term of imprisonment of at least 10 years.  As stated above, he is currently 34 years old.  If sentenced to the mandatory minimum of ten years, with time-served and good-time credit, Mr. Read will be over 40 years old before he is released from prison.  Once released from prison, Mr. Read will be closely supervised by the Federal Probation Office for as long as the Court deems necessary. As part of his supervised release, Mr. Read will be required to attend sex offense counseling.  Mr. Read must also register as a sex offender in whichever community he resides, pursuant to the Sex Offender Registration Act.  Given a lengthy term of supervised release, the Court could order mental health and sex offender counseling, along with continued monitoring.  Should Mr. Read violate any of his conditions of supervised release, the Court could detain him.


**Mr. Read May Be Targeted by Other Prisoners**

Those convicted of sex offenses involving minors face a particularly difficult time in prison.  They are on the bottom rung in the hierarchy of prison inmates.  While detained at the Monroe County Jail Mr. Read has requested solitary placement in the Special Housing Unit in order to avoid being targeted by other inmates.

Harassment of inmates convicted of child sex offenses is also common within the Bureau of Prisons system.  Harassment comes not only from fellow inmates, but from the guards

themselves.  An article in the Associated Press, dated February 16, 2014, titled *Many Sex Offenders Killed in California Prison*, chronicled the increased percentage of homicide victims who were convicted sex offenders.  Male sex offenders make up 15% of the California prison population, but are almost 30% of the homicide victims.

Many times, prison officials attempt to minimize the dangers to someone convicted of child sex offenses by placing them in protective custody, where they spend a majority of time isolated in a Special Housing Unit.  Because fellow inmates will likely learn of Mr. Read's conviction, he could very well find himself segregated from the general population in prison, as he has at the Monroe County Jail.  Unfortunately, although isolation is an easy remedy for prison guards, it is yet another aspect of prison life that can cause severe and lasting psychological damage to an individual.

**Mr. Read's Life Following Prison**

After serving a prison sentence, Mr. Read will be on federal supervised release for a period of time determined by Your Honor.  He will be under intense scrutiny and will have to abide by all of the standard conditions of supervised release.  Mr. Read will also be subject to special conditions of supervised release.  These special conditions will typically include: psycho-sexual assessments and treatment (including the requirement of polygraph testing), outright bans or limitations on the use of computers and the Internet, and limitations on his ability to be near children without supervision.  Should Mr. Read violate any standard or special conditions of supervised release, he will appear before Your Honor and will be subject to further incarceration.

Mr. Read will also be required to register as a sex offender with local authorities. In addition to being closely supervised by the Court and United States Probation, as a convicted sex offender pursuant to the Sex Offender Registration Act, a.k.a., Megan's Law, Mr. Read's responsibilities as a registered sex offender will require him to report to his local law enforcement agency annually for a number of years, depending on his classification. Mr. Read will have to report his residential address, telephone numbers, email address, employment, schooling, automobile, and possession of any professional licenses. In addition, the sex offender registry is available to the public via the internet. The registry will include a photograph of Mr. Read, along with his date of birth, height, weight, hair, and eye color. The supervising agency and the special conditions of supervision are also included on the web site. Anyone with access to a computer, be it a potential employer or a neighbor, can view this information. Mr. Read will be punished for his crime for the rest of his life - whether he is in prison or not. His life is forever changed.

**What is an Appropriate Sentence for Mr. Read?**

The Sentencing Guidelines in Mr. Read's case are unreasonably high. The mandatory minimum sentence available to the Court is 10 years. Prior to his detention in this case, Mr. Read has never spent more than a few days in jail. A sentence of 10 years is more than sufficient to account for Mr. Read's conduct and to satisfy the sentencing requirements of §3553. When Mr. Read is released from prison, based on the requirements of federal probation supervision, sex offender registration, and continued sex offender treatment, the public will be protected.

## CONCLUSION

For the reasons set forth above, it is respectfully requested that the Court sentence Mr.

Read to a term of 10 years.  Such a sentence would be sufficient, but not greater than necessary.


Dated: October 31, 2019               S/Jeffrey L. Ciccone
      Rochester, NY                  Jeffrey L. Ciccone
                                     Assistant Federal Public Defender
                                     28 E. Main Street, Suite 400
                                     Rochester, New York 14614
                                     (585) 263-6201
                                     Jeffrey_Ciccone@fd.org
                                     Attorney for William Read